JAMES STORRING and others *vs.* CHARLES H. BORREN and others.

A testator, by his will, devised and bequeathed to his wife all his real and personal property, for life or widowhood, and after her death or re-marriage, he devised all his real property to his three eldest sons, F., P. and J., to be divided equally between them. To his son H. he gave his choice of choosing, *on his* (the testator's) *decease,* a guardian, and being apprenticed to a trade, and, after the expiration of his apprenticeship, to be paid $100 by F., P. and J. jointly, out of the real estate; or, if he preferred it, the testator gave him one-fourth part of his real property, after the decease or re-marriage of his mother, to share equally with F., P. and J. In an action brought by the heirs of H. to recover an undivided fourth part of the land, under the will:

*Held,* 1. That the true question was, did H. elect to receive the benefits to be derived from the first branch of the bequest; or did he elect to take under the devise of the real estate; not whether he afterwards so acted as to carry out the intentions of the testator in respect to the first branch.

2. That the will being explicit, and requiring the choice to be made at the decease of the testator, viz., at once, after the provisions of the bequest should become known to the legatee, he was bound to make the election at the time specified; and that infancy was no excuse for not making such election.

3. That upon the question whether or not H. elected to take the lands, the plaintiffs, claiming under him, had the affirmative; and it was not enough for them that the defendants did not prove that he did not elect to take them, but the plaintiffs must prove that he did so elect, before they could claim the benefit of his election.

4. That if H. was bound at once to make an election, and if he did make it in favor of the legacy, though he was under age, and never received the $100, he could not afterwards change the election; and the only claim he could have upon the land was his lien upon it, created by the will, for the payment of the money.

And the referee having found, as facts, that H. chose to have a guardian and learn a trade, and to be paid the $100 as provided in the will; that he never elected to take, or manifested his preference for, a share in the real estate, until after the decease of his mother; *Held* that these facts warranted the conclusions of law that H. had no right to a share of the real estate, until he made choice of it, as mentioned in the will; that he was to make that choice on the death of the testator, and could not wait till the death of his mother, and then make it; and that having chosen the first alternative, he could not afterwards choose or claim any part of the real estate, even though the $100 had never been paid.

THIS was an action of ejectment, commenced in October, 1861, to recover the undivided fourth part of one hundred (100) acres of land, lying in Deerfield, Oneida county, by the plaintiffs as the heirs at law of Henry A. Storring, their deceased father, and to which Henry A. Storring claimed title under the following clause of the will of his father, Adam Storring, which was executed on the 4th day of June, 1812, to wit:

"I give and bequeath unto my well beloved wife Nelly, all my real and personal property after my decease, during her natural life, if she remains my widow, and after her death, or after she shall marry again, I give and bequeath all my real property to my three eldest sons, namely: Frederick, Philip and John, to be divided equally between them. To my son Henry, I give him his choice of choosing, *on my decease,* a guardian, and being bound apprentice to a trade, and after the expiration of his apprenticeship, to be paid one hundred dollars by my above named sons, Frederick, Philip and John, jointly, out of my real estate; or, if he prefers it, I give and bequeath him one fourth part of my real property, after the decease or marriage of his mother, to share it equally with Frederick, Philip and John."

The complaint alleged, among other things, that Henry A. Storring did not choose and did not have a guardian, and did not learn a trade, and did not receive the $100 mentioned in the will of Adam Storring, but that he proposed to take the one-fourth of the real estate, after the death or marriage of his mother.

The answer denied most of the allegations of the complaint, and claimed that Henry A. Storring did choose a guardian, and was apprenticed to, and did learn, a trade; and denied that he preferred or chose to take one fourth of the real estate, as provided by the will. The action was referred to R. Earl, Esq., to hear and determine the issues; and on the hearing before him, the plaintiffs gave

in evidence the will of Adam Storring, bearing date June 4th, 1812, and proved that Adam Storring died seised of the premises in question, on the 6th day of June, 1812, leaving Nelly Storring his widow, and his four sons above named and several daughters, him surviving. That Henry A. Storring was his youngest son, and of about the age of 17 or 18 years when his father died. That Nelly Storring went into the possession of the premises immediately after the decease of her husband, and that she remained unmarried until the 4th day of October, 1841, when she died. That soon after her death Henry brought an action of ejectment to recover the premises. That the cause was tried in 1845, and he was nonsuited; and that he died in April, 1860, leaving the present plaintiffs his only heirs at law. The plaintiffs also introduced in evidence an agreement, under seal, bearing date the 18th day of May, 1817, between Frederick Storring and Philip Storring of one part, and John Storring of the other, by which John released and conveyed to them all his interest in the real and personal property of Adam Storring, deceased; and they agreed to pay him $300 therefor. *And the said Frederick and Philip agreed to pay a legacy of* $100, *as given by the will of the said Adam Storring, deceased, to Henry his son.* The plaintiffs also read in evidence a lease from Nelly Storring to Frederick Storring and Philip Storring, for and during her life or widowhood, of the 100 acres of land in question, at the annual rent of $50, which lease bore date the 24th of June, 1817.

John Storring, a witness called by the plaintiffs, testified that his brother Philip died in 1836. That not long before his death he told the witness he had paid Henry the legacy of $100 going to him under the will. That some time after, in a conversation with Henry about the legacy, which Philip said he had paid, Henry did not say but what it was paid—the $100—but said he had an account against Philip for work; and that the conversation

with Philip, about paying Henry, was about a year before Philip died. On being recalled by the defendant, the witness testified that soon after Adam Storring's death, Henry went to Joel Falkner's, being at the time about 17 or 18 years old. That he remembered that Henry lived at East Creek after he was married, and that he followed the milling business; and that he saw him at work at Schenck's mill, and at a grist-mill in Waggoner Hollow, some ten years after Adam Storring's death.

It was proved by Daniel Falkner that, in 1812, Henry was living in the family of Joel Falkner, in Glenn, and that he was working for Joel Falkner, who carried on carding and cloth dressing, and a grist-mill and saw-mill. That Henry worked at carding, in the season for that work, and when cloth dressing commenced he worked at that, and when that was over he worked in the grist-mill, and sometimes in the saw-mill. That he was there about five years, and while there married a daughter of Joel Falkner. That he returned there with his family once or twice, the first time in 1826–1827, and worked in the grist-mill, and occasionally on the farm. His principal business was tending grist-mill as a hired hand. Another witness testified that he knew Henry Storring long ago; that he lived at Newport, and tended a grist-mill there a while. The widow of Henry Storring testified that he tended mill at Newport, and that he tended mill at Fonda, but the time at either place was not stated.

The referee found as matter of fact, among other things, that Henry Storring, at the time of his father's death, was a minor under 18 years of age, and soon after his father's death, and during the same year, he left the home of his mother, and commenced to learn, and in the course of time did learn, the trade of a miller. That there is no direct proof that he chose a guardian, and was actually apprenticed to a trade; yet from the fact that he left his home to learn a trade, and worked for and lived with the

same person for several years, successively, and actually did learn a trade, he (the referee) inferred, as matter of fact, that he chose to have a guardian and be bound an apprentice, and to be paid the $100, as provided in the will. That he never elected to take, or manifested his preference for, a share in the real estate, as provided in the will, until after the decease of his mother, when he commenced an action to recover his interest in the land; and that there was no proof that the $100 had ever been paid him.

He also decided, as matter of law, 1. That Henry Storring had no right to the real estate, until he made choice of it, as mentioned in the will; that he was to make that choice on the decease of his father, and could not wait till the death of his mother, and then make his choice. 2. That having chosen the first alternative, he could not at any time afterwards choose, or claim, any part of the real estate; and he could not do so, even if the $100 had never been paid; for, having made his choice, he was to look for that, either to his brothers or the real estate out of which it was directed to be paid. And the referee found and decided that the plaintiffs were not entitled to recover any portion of the lands in question, and ordered the complaint to be dismissed, and that the defendants have judgment, with costs.

The plaintiff's counsel excepted, 1st. To that part of the finding of fact by which the referee found that Henry Storring left the house of his mother the same year his father died, and commenced to learn, and in the course of time did learn, the trade of a miller. 2d. To that part by which he assumed as a fact, that Henry left his home to learn a trade, and did learn one, and then inferred therefrom that he made choice to have a guardian and be bound an apprentice, and to be paid the $100, as provided in the will. 3d. To that part of the report by which the referee found, as matter of law, that Henry Storring was to make

the choice given him by the will, on the decease of his father, and could not wait until the death of his mother, and then make his choice. 4th. To so much of the report as found, as matter of law, that having chosen the first alternative, he could not afterwards choose or claim the real estate; and that he could not do so, even if the $100 were never paid ; for, having made his choice, he was to look for that, either to his brothers or the real estate out of which it was directed to be paid.

Judgment was rendered on the report, dismissing the complaint, with costs to the defendants ; from which judgment the plaintiffs appealed.

*D. P. Corey,* for the plaintiffs.

*J. H. Wooster,* for the defendants.

*By the Court,* FOSTER, J. I think the findings of the referee are supported by the evidence. The testimony shows that, in the same year that his father died, Henry Storring left home and went to Joel Falkner's, and remained with him some five years, and there learned the trade of a miller, an employment which it is proved he followed at several places, for several years thereafter. The plaintiffs introduced in evidence the agreement of the 18th of May, 1817, between his three brothers, which made provision for paying him the $100 mentioned in the will. It is true that this would not have been competent evidence coming from the other side, but they chose to introduce it themselves; and although it does not directly establish, as against Henry, that he had elected to learn the trade and take the $100, it does show that his brothers understood, as late as 1817, that he expected to receive the $100, and that they were not aware that he intended to claim the real estate. Again, there is no proof whatever, to show that he ever did, at any time

prior to his mother's death, in 1841, (some 29 years after the death of his father,) make known to any one that he intended to claim the real estate; and although after her death he commenced an action of ejectment in which, in 1845, he was nonsuited, it does not appear that he afterwards made any further claim to it, though he lived till 1860. It is not very material to the determination of the question, whether in fact he had a guardian appointed, or whether the $100 was unpaid to him. The true question is, did he elect to receive the benefits to be derived from the first branch of the bequest, or did he elect to take under the devise of the real estate; and not whether he afterwards so acted as to carry out all the intentions of the testator in respect to them.

When was his election or preference to be exercised? If the language of the clause had been indefinite as to time, he would have a right to delay making the choice until he could ascertain, clearly, which would probably be most beneficial to him, and especially as he was under age when his father died. But the will is explicit. It required the choice to be made at the decease of the testator; meaning at once, after the provisions of the bequest should become known to him. The testator could impose such terms as he pleased, as a condition of his son's receiving the legacy or bequest, or he could cut him off entirely if he chose; and when he saw fit to impose the conditions, it was for the legatee to make the election at the time required. Infancy is no excuse for not making the election. "The principle indeed is universal; it prevails in the laws of all countries, is applicable to all interests, to the interests of married women and infants." (3 *Bacon's Abr.*, title *Election* [*E*,] 315.)

I have said that it does not appear that he gave notice in any way, that he elected to take the devise of the real estate; nor does it appear in explicit terms that he chose the legacy. But how did he act. His every act during

the five years after his father died, as far as the proof dis-closes it, was consistent with an election to learn the trade and take the $100. Upon the question whether or not he elected to take the lands, the plaintiffs have the affirma-tive. It is not enough for them that the defendants do not prove that he did not elect to take them. They must prove that he did, before they can claim the benefits of an election. Then if he was bound at once to make the election, and if he did make it in favor of the legacy, though he was under age, and never received the $100, he could not change the election; and the only claim he could have upon the land was his lien upon it, created by the will, for the payment of the money.

The judgment should be affirmed, with costs of the appeal.

[ONONDAGA GENERAL TERM, April 5, 1864. *Morgan, Bacon* and *Foster,* Justices.]