In the Matter of the Judicial Settlement of the Account of Proceedings of ELIZA J. ARKENBURGH as Executrix, and OLIVER M. ARKENBURGH as Executor, of the Last Will and Testament of ROBERT H. ARKENBURGH, Deceased, Respondents.

ROBERT H. ARKENBURGH and ELIZA J. WIGGINS, Appellants.

*Executor's accounting — payments made by an executor after his account is filed — the surrogate cannot decide between adverse claimants to a legacy — renunciation by executors of a specific compensation under section 2730 of the Code of Civil Procedure — laches.*

The refusal of a surrogate to modify a decree made upon the accounting of an executor, by deducting from the amount of cash on hand stated in the decree a sum retained by the executor to reimburse himself for payments made by him, is not error, where it appears that such payments had been made since the account was filed and that their propriety had not been investigated or passed upon on the accounting. The question in respect to such items should be determined upon a subsequent accounting.

Where upon such an accounting the share of a legatee is claimed under a writ of attachment and also under an assignment, both of which are before the surrogate, the latter is without jurisdiction to determine which claimant is entitled to the legacy.

Under the provisions of section 2730 of the Code of Civil Procedure, providing that " where the will provides a specific compensation to an executor or administrator, he is not entitled to any allowance for his services, unless, by a written instrument filed with the surrogate, he renounces the specific compensation," the surrogate may, after the filing of such renunciation, allow his commissions on the same principles which would control if there had been nothing said in the will in regard to specific compensation.

*Quære,* as to whether the executor is entitled to full compensation and whether the failure to file the renunciation until two and one-half years after letters testamentary were issued, does not constitute such *laches* as will deprive the executor of the benefit thereof.

APPEAL by Robert H. Arkenburgh and Eliza J. Wiggins, two of the legatees named in the last will and testament of Robert H. Arkenburgh, deceased, from the whole of a decree of the Surrogate's Court of Rockland county, entered in said Surrogate's Court on the 30th day of December, 1895, settling the account of the executors under said will, except from that portion thereof which adjudges that Robert H. Arkenburgh is entitled to receive from the estate of Robert H. Arkenburgh, deceased, the sum of $2,347.26 ; also from an order bearing date November 15, 1894, and entered in said Sur-

rogate's Court, directing the payment to Oliver M. Arkenburgh of $3,000; and also from an order bearing date the 30th day of January, 1896, and entered in said Surrogate's Court, denying said legatees' motion to vacate or modify the decree.

*Charles Edward Souther*, for the appellants.

*Robert F. Little* for Oliver M. Arkenburgh, as executor, respondent.

WILLARD BARTLETT, J.:

The appellants present four questions for our consideration upon this appeal. We will discuss them in the precise form and order in which they are stated on the brief of counsel.

1. The first question is whether the surplus of the estate remaining and ready to be distributed was not overstated in the balance of $48,778.06, as found in the summary statement to be taken as part of the decree.

The summary statement in the decree states the amount of cash on hand to be $10,778.06. The appellants contend that this amount should have been stated to be $7,494.32, because it appears from an affidavit made by the executor, Oliver M. Arkenburgh, that he had paid himself $3,232.32 since the filing of his account. After the decree was entered the appellants applied to the surrogate to modify it so as to make this correction, and one of the appeals here is an appeal from the order denying that application. In opposition to the motion it was shown in behalf of the executor, Oliver M. Arkenburgh, that this item of $3,232.32 represented payments made in the course of his administration for expenses which had not been repaid to him; and as they had been made since his account was filed and their propriety had not been investigated or passed upon in this proceeding, it was proper for the surrogate to leave all questions in respect to such item to be determined upon a subsequent accounting. We find no error, therefore, in allowing the amount of cash on hand to remain as stated in the decree.

2. The second question is whether the decree did not omit to direct the payment and distribution thereof to the persons entitled thereto according to their respective rights as to the items therein, of $2,347.26 and $3.09. This question relates to that portion of the decree concerning the amount which Robert H. Arkenburgh is

entitled to receive from the estate. The decree, after fixing the sum payable to said Robert H. Arkenburgh, recites that this distributive share is claimed by the sheriff of the city and county of New York under a warrant of attachment, and also by Eliza J. Arkenburgh under an instrument of assignment from the said Robert H. Arkenburgh. It further directs that the amount due to the said Robert H. Arkenburgh by reason of his demands against the estate be held and retained by the executors until the rights of the several parties claiming to be entitled to the same shall have been determined by a court of competent jurisdiction. The warrant of attachment was before the surrogate, as well as the instrument of assignment. If the assignment alone had been before the court and stood unquestioned, it would have been the duty of the surrogate to order the distributive share to be paid to the assignee; but when it appeared that such share was claimed by a person alleging himself to be a creditor of the distributee, the surrogate was without jurisdiction to determine to which of the claimants payment should be made. (*Matter of Redfield*, 71 Hun, 344.)

3. The third question is whether the decree was not unlawful in allowing the executors to retain the sum of $17,873.64 as commissions to which they were entitled.

There is no controversy as to the amount of the commissions. The only question is as to whether they should have been allowed at all, in view of the language of the will on the subject of commissions.

This language is as follows: "I direct that the sum of one thousand dollars and no more shall be allowed to or received by each of those who shall qualify as executrix or executor hereunder as and for their commissions, and said sum shall be in lieu of the commissions allowed by law."

"Where the will provides a specific compensation to an executor or administrator," says section 2730 of the Code of Civil Procedure, "he is not entitled to any allowance for his services, unless, by a written instrument filed with the surrogate, he renounces the specific compensation."

The written instruments of renunciation contemplated by this provision of the Code were filed by the executor and executrix with the surrogate of Rockland county about two and a half years after letters testamentary were issued.

It is contended in behalf of the appellants, however, that such renunciation on the part of the executors did not authorize the surrogate to allow them commissions, and in support of this position we are referred to *Secor* v. *Sentis* (5 Redf. 570) and *Matter of Hopkins* (32 Hun, 618).

In neither case is the point actually decided authority for the proposition that executors cannot be awarded commissions if they renounce the specific compensation mentioned in the will.

In *Secor* v. *Sentis* (*supra*) the testator expressly declared in his will that his executors should receive no compensation or fees for their services in settling his estate. And what the surrogate really decided was that such executors could not claim any commissions as of absolute right; and, furthermore, that if the giving or withholding of commissions was in the discretion of the surrogate they ought to be disallowed in that case, especially as the will gave one-half of the testator's residuary estate to one of the executors and to the wife of the other.

In the *Matter of Hopkins* (*supra*) the court simply decided that the administrators, by reason of an agreement in writing which they had made with other persons interested in the estate before taking out letters of administration, were estopped from subsequently claiming commissions.

No doubt some of the language used by Surrogate ROLLINS in the *Secor* case indicates that it was his opinion that the renunciation of the particular compensation specified in the will did not entitle the executor as of course to the commissions prescribed by statute. Discussing the provision in section 2737 of the Code, which then contained the provision in regard to the renunciation of specific compensation, now found in section 2730, he observes: "To say that one shall never have one thing without giving up his claim to another is not the same as to say that he can always have the first if the second is surrendered." This is the utterance of an able judge, especially versed in the interpretation and construction of probate law, but I am unable to concur in his conclusion in respect to the implication of the clause of the Code under consideration. It seems to me that the language of the statute implies so clearly as to admit of no serious question that the effect of filing the written instrument of renunciation therein provided for is to entitle the executor to

·commissions for his services. I do not mean to say that the executor thus becomes entitled to the full commissions permitted by law, but I think that, after the renunciation. is filed, the surrogate may allow him commissions on the same principles which would control if there had been nothing at all in the will in regard to specific compensation.

There is no hardship or injustice to testators in this construction of the clause in question. Persons who make wills are supposed to know the law; and when they provide a specific compensation for their executors in lieu of commissions, they must be deemed to be aware that the statute gives their executors a right to elect between that compensation and the usual commissions. On the other hand, I am at a loss to see what effect could be given to the clause if the contention of the appellants were allowed to prevail.

But in this case it is said that the executors did not renounce in time, and the case of *Arthur* v. *Nelson* (1 Dem. 337) is cited, in which Surrogate Coffin, of Westchester county, held that where letters testamentary had been issued in 1872, a renunciation filed under section 2737 of the Code in 1881, was too late. In that case it appeared that all the facts necessary to enable the executors to elect were known to them as early as 1872. No such lapse of time occurred in the case at bar, and I find nothing in the circumstances here to demand or justify an application of the doctrine of *laches*. It may be noted in reference to this branch of the case that Surrogate Rollins, of New York county, took a different view of the law from that adopted by Surrogate Coffin in *Arthur* v. *Nelson*. "No time is fixed by law," he said, "within which an executor must choose between his statutory commissions and his testamentary bequest, and I see no reason to doubt that so long as he has not indicated his election either by taking to himself one or the other, or by some other mode, his right to file a renunciation and to avail himself of its benefits remains unimpaired." (*Matter of Weeks*, 5 Dem. 194, 200.)

4. The fourth and last question to be determined on this appeal is whether an account in the testator's ledger, showing a balance on September 20, 1890, the date of his decease, of $26,530.66 against the executor, should not have been reckoned with the surplus and applied and distributed as part of the testator's personal property.

The answer to be given to this question depends chiefly on the view which should be taken of the facts.

It was the contention of Oliver M. Arkenburgh, the respondent, that the charge represented moneys received by him from his father under an agreement made between them in 1878, whereby his father undertook to compensate him for his services by paying him enough to maintain him in the manner in which he had been brought up.

This agreement rested on the testimony of Oliver M. Arkenburgh himself. If that testimony had been given without objection, I am not prepared to say that I should differ from the conclusion reached by the surrogate on this branch of the case. It is true that we have the same power as the surrogate to decide the facts (Code Civ. Proc. § 2586); but in the discreet exercise of this power, upon the same record and without any additional evidence before it, an appellate court, while not hampered as in reviewing questions of fact on appeals from judgments, should remember that the surrogate has had the advantage of seeing and hearing the witnesses, and may allow that circumstance its proper weight.

The agreement is said to have been made in 1878, after Oliver M. Arkenburgh graduated from college and went into his father's office. When Oliver M. Arkenburgh was questioned by his own counsel in reference to the conversation which he had with his father at this time, the objection was taken in behalf of the appellant that the evidence was incompetent under section 829 of the Code of Civil Procedure, but the learned surrogate overruled the objection on the ground that the counsel for the contestants had already examined the witnesses concerning the employment and communications had between the witness and deceased. To this ruling, which was repeated several times in the record, exception was duly taken, and thus the question is distinctly raised whether the testimony of Oliver M. Arkenburgh, in reference to this interview with his father, was properly received. Its admission is sought to be justified only on the ground that the appellant had opened the door by previously examining the witness concerning the same transaction. This assertion by counsel and assumption by the learned surrogate are not supported by the record. I have carefully read all the testimony given by Oliver M. Arkenburgh up to the time when he was examined by his own counsel concerning this conversation with his father

in 1878, and I do not find a word referring to that interview. It is clear, therefore, that a serious error was committed in receiving this evidence. The opinion of the surrogate shows that he believed the testimony of the son in regard to what his father said to him at the interview in question concerning his employment and compensation, and the learned surrogate also evidently believed that the moneys which the books showed the son to have received were paid to him under an agreement growing out of that interview. It may well be that, in the absence of any testimony as to this interview, the surrogate would have charged the son with these moneys, or some portion thereof.

On account of this error in the admission of evidence it is necessary to reverse the decree, so far as this part of the account is concerned, and remit the proceeding to the surrogate for a further hearing in regard to this branch of the case.

All concurred.

CULLEN, J. :

I concur, except that I think the executors were entitled to full commissions, as a matter of right, to the same extent as other executors. If a testator wishes to avoid this, the only way he can accomplish his desire is to make the appointment of the executor conditional upon his executing an agreement to serve without further compensation than that allowed by the will. Executors' commissions are none too large for faithful service, and it is my notion that the best practice is to give executors full compensation, and then hold them to the strictest accountability. I imagine persons could readily be got to serve in the case of a large estate without pay, but they would be apt to manage the estate so as to get indirectly a much larger profit than that allowed by the statute. It is such management that leads to the depletion of trust estates, which often comes up in the courts. Except where it is a matter of affection or duty, services rendered without pay are generally worth no more than what is paid for them.

All concurred.

Decree reversed and proceeding remitted to the surrogate of Rockland county for a rehearing in accordance with opinion.