Foote, J.
The testator, Samuel K. Hester, died on the 10th day of January, 1908. His will, and two codicils thereto, were probated on the 25th of January, 1908, and letters testamentary were issued to the plaintiff Minnie J. Hester, his widow, the defendant David S. Hester, his cousin, the plaintiffs Byron M. Hester, his son, and Sylvia M. *211 Rawleigh, his daughter, and the defendant Montgomery S. Sanford. The testator left him surviving his widow, Minnie J. Fester, about forty-eight years of age, a son, Frederick T. Fester, aged thirty-nine, and a daughter, Sylvia M. Rawleigh, aged thirty-five, both children by a former wife and both plaintiffs, and three sons, Byron M. Fester, aged twenty-four, S'amuel K. Fester, aged twenty-one, both plaintiffs, and Harold A. Fester, aged eleven, a defendant, children by his surviving wife. He also left him surviving four infant grandchildren, the defendants Howard W. Fester and Albert T. Fester, sons of the plaintiff Frederick T. Fester, the first born before, and the second after, the date of the will, and J ames F. Rawleigh and Carol J. Rawleigh, children of the plaintiff Sylvia M. Rawleigh, the first born before, and the second after, the date of the will. He left an estate inventoried after his death as of the value of about $1,075,000, about $360,000 of which consisted of numerous parcels of real estate in and near Geneva, F. Y., where he resided, and large farms in Dakota and Kansas. He had about $430,000 invested in the malting business aside from the real estate where that business was conducted. The annual income from his real estate is about $10,000, and from his personal estate about $35,000. At the time of his death he was sixty-eight years of ¿ge. His will was executed on the 9th day of May, 1896, the first codicil on the 24th of January, 1905, and the second on the 3d day. of May, 1907. These codicils make changes in the executors and trustees named in the will and revoke some pecuniary legacies, but do not affect the main provisions in question here.
The controversy here is over the legal validity of the trusts created by the will; the claim of plaintiffs being that they all suspend the power of alienation of the real estate and the absolute ownership of the personal property beyond two lives in being at the time of the death of the testator, contrary to statute. It should be noted that the widow and all the adult children join in the attack upon this will, and that it is defended only by two of the executors and trustees, who receive nothing under the will except the annual salary *212 of $1,000 for one and $1,500 for the other, in lieu of all commissions or other compensation, and by the guardian ad litem for the infant son Harold.
By the first item of his will the testator gives to his executors the house and lot in the village of Geneva, where his son Frederick resides, in trust, to receive the rents, issues and profits “until the arrival of the time herein fixed for my said executors to have their first judicial accounting,” if his son Frederick shall live so long, and, if not, then until his death, and during that time to apply the same to the use of his said son Frederick. By the eighth item of the will the executors are directed to permit his son Frederick to live in and occupy said house and lot during the time limited for the duration of the trust. By the fifteenth item the executors are authorized to sell this house and lot in the event of Frederick’s death or his entire abandonment of its occupancy, and, in case of such sale, it is provided as follows: “ The avails thereof shall, if the time herein fixed for the distribution of the capital of the estate given in trust by said seventh item shall not have arrived, pass to said executors in trust and be held by them upon the trust in said seventh item defined.”
The remainder, after the termination of the term for the benefit of his son Frederick, is not afterward otherwise mentioned or disposed of in the will. By the seventh item of the will all the testator’s property, real and personal, not otherwise specially disposed of, is given to the executors on certain trusts therein mentioned during the two lives of his sons, Byron and Samuel, or until the youngest shall have attained the age of twenty-six years. By the tenth item of the will provision is made for an accounting by the executors and trustees upon the termination of his trust of the residuary, and for a distribution of his estate among his next of kin, except in respect to a portion directed to be held to produce annuities for life to his widow of $3,000, and to his son Daniel Delano for $600.
The plaintiffs contend that there is an unlawful suspension of the power of alienation of this house and lot beyond the statutory period; the argument being, first, that the time *213 fixed by the tenth item for the first accounting may be beyond two lives in being; and, if not so, then, second, that there is a suspension of the power of alienation during the three lives of Frederick, Byron and Samuel. Neither of these contentions is in my opinion well founded. This house and lot are, by the first item of the will, given to the executors in trust “ until the arrival of the time herein fixed for my said executors to have their first judicial accounting.” The time for the first judicial accounting is fixed by the tenth item of the will in the following language: “ When my son Samuel shall have attained the age of twenty-six years, or if before then he shall die leaving my son Byron surviving, then, when my son Byron shall attain the age of twenty-six years, or shall die before attaining that age, or in case of the death of my son Samuel occurring before he attains the age of twenty-six years my son Byron be not living, then within two years after the death of my said son Samuel so occurring, my executors shall render to the proper court an intermediate account of their proceedings as such and as trustees under this will.”
It is said that because of the expression “ then within two years after the death of my said son Samuel ” the time fixed by the testator for his executors to have their first judicial accounting (and so the time fixed for the termination of the trust of the house and lot for his son Frederick) is or may be limited by the two lives of his sons Byron and-Samuel, and a term or period thereafter not measured by lives, but by the time within two years within which the executors may render their account.
The principal trusts created in this will are found in the seventh item embracing the residuary estate. Their validity is attacked upon the same ground, but the question is not precisely the same as will be seen when we come to consider the seventh item. A construction should undoubtedly be made in favor of the validity of this as of all the items of this will, if it can be done within the established rules of construction, and the true intent and meaning of each item of the will should-be ascertained from the whole instrument. There appears to be no reason for assuming from anything *214 to be found in this will that the testator intended to create a trust in respect to this house and lot for Frederick to endure for a longer period than the principal trusts embraced in the seventh item of the will covering the bulk of the estate. Moreover, the remainder of this house and lot after the termination of the trust for Frederick, not being-otherwise disposed of, becomes a part of the residuary estate to be distributed therewith; so that there was not only no occasion for the trust of this house and lot to endure for a longer time than the trust of the residuary estate, but from the fact that the proceeds of its sale are to be distributed with the residuary estate we should expect the trust term of each to be of the same duration. By the seventh item of the will the trusts in respect to the residuary estate are expressly limited until the testator’s sons Byron and Samuel shall have died, or until, before such death, the youngest of the two shall have attained the age of twenty-six years. The language is: “All the rest, residue and remainder of my property, real and personal * * * I give, devise and bequeath to my said executors, in trust, however, for the following uses and purposes, to wit, to employ so much thereof as they may deem best and for the interest of the estate so given them in trust by this item of my will in continuing the business of malting in which I have been engaged, so long as they may deem best for the interest of such estate, and to such extent as they may deem best for such estate, not longer, however, than until my sons Byron and Samuel shall have died, or until before such death the youngest oue of said two sons shall have attained the age of twenty-six years; to receive the' rents, issues and profits of my real estate in this item given them in trust which shall not be so employed, and of any real estate they may purchase under my authority herein given, until my sons Byron and Samuel shall have died or until the youngest one of them living shall have attained the age of twenty-six years; and during the same time to invest and keep invested earning income the personal estate in this item mentioned that shall not be so employed, and from the rents so received and the income produced by the personal property so invested and *215 the profits, if any, that may arise from the conduct of the business I have herein authorized them to carry on [to pay certain specified sums each year to his wife and children and certain taxes and insurance, and the surplus income, if any, to divide annually among his next of kin, etc.] ”
The power of the executors to receive the income as trustees continues only “ until my sons Byron and Samuel shall have died or until the youngest one of them living shall have attained the age of twenty-six years.” The trust as an express trust continued no longer, and the power of alienation was suspended no longer.
In view of this, what did the testator mean by the expression in the first item, “ until the arrival of the time herein fixed for my said executors to have their first judicial accounting ? ” Clearly he did not mean until the first accounting was actually had. The proper interpretation in harmony with what appears to have been the testator’s intent is that when his youngest son Samuel (who was twenty-one years old at the death of the testator) should become twenty-six years of age, or, in case of his death before reaching that age, then when Byron (who was three years older) should become twenty<six years of age, or, if neither reached the age of twenty-six years, then on the death of the survivor, the time arrived for the executors to have their first accounting. This accounting the executors were directed to make within two years, in the event of the younger son Samuel dying before he became twenty-six years of age and of Byron having previously died. If Samuel lived to be twenty-six years of age, the duration of the trust would be about five years, and the executors would know long in advance of his reaching that age the day when the trusts would terminate and the day their duty to account would begin. They could, therefore, make the necessary preparations in advance, which involved, among other things, selling and converting into money a considerable amount of real estate. But, if Samuel’s death should occur unexpectedly before he became twenty-six years of age, his brother Byron having previously died, then the trust would come to an end at an unexpected time, with no opportunity on the part of the executors to *216 have prepared in advance for their accounting, and it may have been in view of this that the testator provided in this latter event that the executors should render their account within two years. However that may be, there seems to be nothing in this will requiring the construction that the duration of the trust was to be prolonged until the executors saw fit to render their account or have their accounting in the contingency of Samuel’s surviving his brother and dying under twenty-six years of age, when it clearly would not be prolonged until the accounting in case the trust was brought to an end by any of the other contingencies. I think the intention of the testator was in the .first contingency mentioned to give the executors more time for rendering their account, but not thereby to extend the duration of the trust, and that the expression “ until the arrival of the time herein fixed for my executors to have their first judicial accounting ” should be interpreted as if it read “ until the beginning of the time herein fixed.”"
The second objection to the validity of this trust is that it is said to be measured by three lives in being, irrespective of the two-year period within which the executors may have their accounting; that is to say, the lives of Frederick, Byron and Samuel. The provision is that this house and lot shall be held in trust by the executors until the arrival of the time fixed for the first accounting “if my said son shall live so long, and, if he shall not live so long, then until his death occurring before that time.” The argument is that here is one life by which the duration of the trust is measured, namely, that of Frederick, and, in case of his death before the first accounting, then by virtue of the seventh item, the trustees will hold the house and lot as a part of the residuary estate during the existence of the general trust created by the seventh item of the will, or during the lives of. Byron and Samuel, and so it is said that there may be a suspension of the power of alienation during the lives of Frederick, Byron and Samuel.
I think, however, the duration of this trust is to be measured by the lives of Byron and Samuel. In no event can it continue beyond the duration of those two lives. The *217 construction should be the same as if the trust in item 1 were included in item 1, being the residuary trust. In that case this house and lot would have vested in the executors in trust to permit Frederick to occupy the same, or to receive the rents and profits during the term of the residuary trust or for his life, if he should sooner die. In that case it-would be clear that the duration of the trust would be measured by the two lives of Byron and Samuel, and not by that of the beneficiary, Frederick.
The second item of the will creates a trust in the executors of another house and lot in favor of the testator’s brother, Franklin Hester, in substantially the same language as that used in the first item. Its validity is questioned upon the saíne grounds as the trust for the testator’s son Frederick, and what has been said in defense of the first item will apply here. There is this difference, however, in the language of the two items. The trust in the first item is “until the arrival of the time herein fixed for my said executors to have their first judicial accounting;” while in this item it is “ until the time herein fixed for my executors to have their first judicial accounting.” There is no reason apparent or possible to be inferred from anything contained in this will for imputing to the testator an intent to make the trust term here longer than in the first item for his son Frederick, or longer than the general residuary trust, nor does the slight change in phraseology from that used in the first item require a different interpretation. The scrivener no doubt used the reference to the time fixed for the accounting to mark the termination of the trust for convenience and brevity, since a reference to the death or coming to twenty-six years of age of the two sons as the termination would have required a much longer form of expression to be repeated in each of the items.
By the fourth item the testator devises to his executors his homestead property in Genesee street, in the village of Geneva, and all the furniture, horses, carriages, etc., and also the house and lot. on Clinton street occupied by his coachman, “in trust, however, to receive the rents, issues, and profits thereof for and during the life of my wife, Min *218 nie, and during that time to pay the same over to my said wife for her own use.” By the tenth item of the will it is provided that, in case his wife, Minnie, shall not be living at the time of the first accounting provided for in that item, then the proceeds of this property shall be distributed with the other residuary estate among his next of kin, but, if she is then living and dies thereafter, then upon her death the executors shall convert this real property into money, and distribute it among his next of kin. It will thus be seen that in no event is the absolute ownership or power of alienation of this house and lot to be held in abeyance longer than during the life of his widow. , But if it be assumed that the death of the wife may occur before the first accounting, and that the executors are then to hold this house and lot or its proceeds during the same period of time measured by the lives of Byron and Samuel until the time for the first accounting, and that thus the duration of the trust may be measured by those three lives, then clearly the life estate to the wife should not be invalidated, but that part of the trust to continue after her death and until the first accounting should be cut off as invalid. Post v. Hover, 33 N. YYY. 593; Harrison v. Harrison, 36 id. 543.
But the principal attack of the plaintiffs is made against the seventh item, embracing the great bulk of the estate. By that item the testator gives all the rest, residue and remainder of his property, real and personal, to his executors, in trust to receive the rents, issues and profits of the real estate until his sons Byron and Samuel shall have died, or until the youngest one of them living shall have attained the age of twenty-six years, and during the same time to invest and keep invested, earning income, the personal estate, and from the rents of the real estate and income of the personal estate to pay certain specified sums to his widow and children, and to make certain other payments not pertinent to the question which is here presented. Among other payments is one of; $2,000 a year directed to be made to his daughter Sylvia “ until the time shall arrive for the first judicial accounting herein directed to be made or until before that time she may die;” also a payment to his son Frederick of $3,000 each *219 year “ during the same time or until such time before then as he may die;” also a payment to his son Daniel Delano of $600 each year “ during that time if he shall so long live.” The main provisions of the tenth item in reference to the time when the executors are to account and distribute the residuary estate have been already stated, but in addition there is the following provision: “And if at that time [when Samuel becomes twenty-six years of age or if he dies before that age, the other contingencies mentioned have happened] my said wife and my son Daniel Delano or either of them be living, there shall then be estimated and set apart by my said executors of the property, real or personal, or both, given them in trust by the seventh item of this will, or property which my executors may have purchased with the avails of the sale of any property included in said seventh item, an amount ample in value to produce the income herein directed to be paid to my said wife and son, if both be living, and if both be not living then to the one of them who shall be living, and my executors shall continue to hold the same in trust, to receive the rents from the real estate, invest and keep invested the personal property so retained and set apart, producing income, if my wife be living, so long as she shall live, and from such rents and income they shall pay to my wife each year during her life the sum of three thousand dollars for her own use and to be absolutely hers; and to my son Daniel Delano, if he be living, each year until the death of my wife, should he live so long, the sum of six hundred dollars in monthly payments of fifty dollars each. And at the death of my wife, if my said son Daniel Delano be living, my executors shall render to the proper court another intermediate account as such executors and trustees of their proceedings in the execution of this will, when there» shall be estimated of the property so retained and set apart an amount ample in value to produce sufficient income to enable such executors to pay my said son Daniel Delano annually the sum of six hundred dollars in monthly payments aforesaid, which property so estimated and lastly set apart, said executors shall continue to hold in trust to keep the same invested earning income until the death of my *220 said son Daniel Delano, and, from the rents and income that may be produced thereby, shall pay to my said son Daniel Delano, each year the sum of six hundred dollars, in monthly payments aforesaid, and the remainder of said property so given in trust by the seventh item of this will, including any that shall have been acquired by my executors as in this will authorized, after taking out the amount so directed to be retained and set apart upon each such intermediate accounting, I direct my executors to distribute to and among my next of kin, except my said son Daniel Delano, so that each shall take the same proportional share thereof that he or she would be entitled to take of my personal estate had I died intestate. And should the amount of income from the property so directed to be estimated and set apart and retained by my executors, in either case, exceed in any year the amount of income actually directed to be paid therefrom, after taking out the expenses of executing said trust, such excess shall annually be distributed to and among my next of kin, except my son Daniel Delano, in the manner herein-before directed as to other property directed to be distributed.”
The other provisions of item 10 need not be stated to appreciate the questions presented in respect to the validity of the residuary trust.
It is said, first, that the residuary trust is invalid because the trust term may continue during the lives of Byron and Samuel, which would be the statutory limit, and for a further term not measured by lives, but by the term allowed to the executors to make their first accounting within two years after the term of the two lives. This objection to the validity of the trust term is not in my opinion well taken for reasons already stated. The seventh item of the will, which creates the trust term in express terms, limits its duration “ until my sons Byron and Samuel shall have died, or until the youngest one of them living shall have attained the age of twenty-six years.” I find nothing in the tenth item 'of the will fixing the time when the executors shall have their first accounting, which in express terms, or by necessary implication, prolongs the trust term as stated in item 7, *221 or is inconsistent with the termination of the trust as there prescribed. It is manifest that during the time which may elapse after the termination of the trust as prescribed in the seventh item and before the accounting of the executors the trust term will not be continued, but the executors will hold the property only for distribution; their title as trustees having ceased. The testator has, however, seen fit to create at this time a further express trust in the executors of sufficient of this same property to continue for his widow the annuity of $3,000 per year during the remainder of her life, and for his son Daniel Delano the annuity of $600 per year during his life. The son Daniel Delano died before the testator; hence, the provision for him never became effective, and, if invalid, does not affect the remainder of the will. But the widow is living, and the question is as to the validity of this additional trust created or continued for her annuity, and, if it be invalid, as to its effect upon the will as a whole. The general trust of the residuary is clearly an express trust within the statute as regards the real estate, rendering the property inalienable during its continxxance, or, if the power of sale works an equitable conversion, the executors still have the title and the trust is indestructible. As regards the personalty, the trust is equally effective to vest title in the executors, and the rights of the beneficiary are likewise inalienable by statute. Pers. Prop. Law, § 15, being Consol. Laws, chap. 41, and prior statutes re-enacted in this law.
The same is true of the additional trxxst created for the widow’s annuity, and, as the first trust is measured by the two lives of Samuel and Byron, the second trust for the widow’s annxxity certainly creates a term in some of the same property for an additional life, namely, the life of the widow, and so the absolute ownership of the personal property and the power of alienation of such part of the real estate as may be set apart to produce the widow’s annuity are suspended beyond the legal limit of two lives prescribed by the statute. But the learned counsel for the executors suggest that this result may be obviated by treating this annuity as a charge only upon the property held to produce it, in which case its present value may be computed and *222 paid off, and thus the corpus of the fund released from the custody of the executors, as was directed to he done in Buchanan v. Little, 154 N. Y. 147; and People’s Trust Co. v. Flynn, 188 N. Y. 385. In those cases the annuity was treated as a charge or lien upon the property from which it was to be produced payable from the property itself or its income. There was in those cases no indestructible trust, as here, and for that reason I think it is impossible to adopt the course suggested. It follows, I think, that the trust for the widow’s annuity beyond the termination of the residuary trust is in conflict with the statute, and void.
Plaintiffs contend that this being one of the main provisions of the will for the widow, if it fails, the whole will, or at least the residuary trust, must fall with it, on the ground that the provision for the widow is so substantial a part of the scheme of the will that to permit the remainder to stand alone would produce a result out "of harmony with the intention of the testator. The question is certainly a debatable one and is not free from doubt. On the face of the will the testator made no other provision for the support of his widow after the termination of the general trust. He apparently overlooked the fact that she would he entitled to her right of dower in his real estate, notwithstanding his will, for he made no reference to the subject. He left real estate of the value of about $360,000, and by virtue of her dower right the widow will be entitled during life to the income of one-third of this. If the will failed as a whole, she would receive a share in the personal property far greater than the testator intended her to have. It would seem, therefore, that to strike out the invalid provision for her annuity after the termination of the general trust, leaving the remainder of the will to stand, would produce a result more nearly in harmony with the disclosed intentions of the testator. Manice v. Manice, 43 N. Y. 305, 384; Tiers v. Tiers; 98 id. 568. The will should, therefore, be held valid, notwithstanding the void trust attempted to be created for the widow’s annuity after the termination of the general trust.
By the sixteenth item of the will it is provided that, if *223 any child shall he hereafter born to the testator, the executors are directed, from the rents, income and profits arising from the principal given to them in trust by the seventh item of the will, to pay annually to his wife, if living, and, if not living, to the guardian of each such child during his or her minority, for his or her support and education, the same amount of money directed to be paid by the said seventh item to his wife or to the guardians of his sons Byron and Samuel, respectively, for the like purpose during their minority. By the seventh item of the will the executors are directed to pay to his wife, or, in case of her death, to the guardians of his sons Byron and Samuel, the sum of $1,000 a year for the support of each of said sons until their death or until they, respectively, attain the age of twenty-one years, and to pay to her or such guardian such further sum eaeh year for the education of said Byron and Samuel as his executors shall deem reasonable, not, however, exceeding the sum of $1,000 a year for each son. The testator’s son Harold was born about seven months after the date of the will, and at the death of the testator he was eleven years of age. It is contended by the plaintiffs that this provision of the sixteenth item of the will for the benefit of this son Harold, he being the only child born after the making of the will, requires a continuation of the trust term in the executors as to enough of the estate to continue these payments to Harold from the income for about ten years, or until he arrives at the age of twenty-one years, and that such trust will or may endure beyond the trust term created by the seventh item of the will during the lives of Byron and Samuel. Assuming this to be true, although no provision is made by the tenth item of the will for such payment, all the estate being therein directed to be distributed from which these sums could be paid, it follows, I think, that, if an unlawful suspension would thereby be created, it must be adjudged null and void from and after the termination of the general trust of the residuary. A trust in the executors to produce these sums for Harold after the termination of the general trust is clearly separable from that time. At that time Harold becomes entitled to *224 his distributive share of the whole estate as one of the next of kin, and there is no hardship to him and no interference with the general plan of the will to annul this trust- by itself without interfering with the other provisions of the will.
Findings may be prepared in accordance with these views to be settled upon notice, and upon the settlement of findings other questions proper to be determined within the issues, if any, will be passed upon.
Foote, J. I am now (upon the settlement of the findings) asked to rule upon certain questions not discussed in my written opinion.
The plaintiffs request a finding to the effect that-, in disposing of the excess income and profits derived from the capital of the estate given in trust by the seventh item of the will, over and above the specific amounts directed to be paid by the seventh and tenth items to the beneficiaries therein named, it was the intention of the testator that his wife should be included among the persons designated by the words “my next of kin” as used in the ninth and tenth items in respect to the disposition of such excess income and profits, and that, in disposing of the remainder interests in the capital of the estate given in trust by the seventh item, it was the intention of the testator that his wife should be included among the persons designated by the words “my next of kin,” as used in the tenth item in respect to the disposition of such remainder interests.
In support of this request, the learned counsel for the plaintiffs contends that, unless the testator’s widow was intended to be included by the words “next of kin,” then there would be an intestacy as to the share of the income and the residuary estate which would otherwise go to her, and that, as the presumption is that the testator intended to dispose of his entire estate and as that- can only be done by including the widow'as one of the “next of kin,” the will itself indicates that such was his intention.
An examination of the provisions of the will under which this question arises will, I think, show that the testator did *225 not intend liis widow to he included hy the words “my next of lcin.”
By the seventh item of the will a general trust is created of his residuary estate, real and personal, to last during the lives of his sons Byron and Samuel, or until the youngest should attain the age of twenty-six years, and from the income is directed to he paid certain fixed sums annually to his children and for taxes and insurance upon this property, two of these provisions being as follows: (a) “To pay to my said wife for her own use the sum of three thousand dollars a year.” (i) “ To pay to my son Daniel Delano each year during that time, if he shall live so long, the sum of six hundred dollars in monthly payments of fifty dollars each.” By the ninth item it is provided as follows: “If, during the duration of the trust created by the above seventh item of this will, there should be produced in any year by the property given my executors in trust by that item, in rents, income and profits of the business I have authorized my executors as such trustees to conduct, a sum of money in excess of the .aggregate sums I have directed to be paid therefrom annually, after paying the expenses of the execution of said trust, I direct my said trustees to annually distribute such excess to and among my next of kin then living, except my son Daniel Delano, so that each one of them shall take the same proportional share thereof that he or she would be entitled to receive of my personal estate had I died intestate.”
By the tenth item, the testator directs that, upon the termination of the general trust created by the seventh item, the executors should set apart and continue to hold in trust enough o+‘ principal to produce an income to continue the payment to his wife of $3,000 per year during the remainder of her life, and to his son Daniel Delano the sum of $600 per year during the remainder of his life, and the remainder of the principal of this general trust he directs his executors to “ distribute to and among my next of kin, except my said son Daniel -Delano, so that each shall take the same proportional share thereof that he or she would be entitled to take of my personal estate had I died intestate.” Then, in *226 case the property set apart to produce the annuity of $3,000 for his widow and $600 for his son Daniel Delano should yield more than sufficient to pay those annuities, he further provides that “ after taking out the expenses of executing said trust, such excess shall annually be distributed to and among my next of kin, except my son Daniel Delano, in the manner hereinbefore directed as to other property directed to be distributed.” Having in mind that at the termination of the general trust his wife and his son Daniel Delano might not be living, the testator makes for that contingency the further-direction, as follows: “And in such case all the property remaining of my estate * * * shall be distributed to and among my next of kin then living in the manner hereinbefore directed as to other property directed to be distributed.”
The argument for the plaintiffs is that the testator has shown an intention to limit the share of each of his next of kin to the proportionate share which each would have received had he died intestate, both as to income and principal. If this were so, then not only is the share which the widow would have taken in case of intestacy undisposed of, but likewise the share which the son Daniel Delano would have received. In using the expression “my next of kin,” he is careful in each case to exclude his son Daniel Delano by name, showing a clear intent to limit this son to the $600 annuity in all contingencies.
Bearing in mind the presumption that the testator intended to dispose of all his estate, it does not seem reasonable to assume that he expected the exclusion of Daniel Delano from a share' would result in leaving that share undisposed of. If not, then his intention clearly was that each of his children, and the descendants of deceased children, if any, should take the same proportional share that each would take had he died intestate leaving no widow and no son Daniel Delano. Such was the construction given to the sixth clause of the will in the case of Luce v. Dunham, 69 N. Y. 36. That clause was as follows: “All the rest, residue and remainder of my estate, real and personal, present and hereafter to be acquired, and wherever situated, I *227 give, devise and bequeath, and do desire and will that the same shall be divided among my heirs and next of kin in the same manner as it-would be by the laws of the State of Hew York had I died intestate.” The testator left no real estate except such as was specifically devised. He left a widow, a sister and three half sisters and no children, and the question was whether the residue of the estate went exclusively to the sisters as next of kin or whether the widow was entitled to share, and it was held that she was not; and, in the course of the opinion of the court by Rapallo, J., it was said (p. 43) : “A provision directing generally that on the decease of a testator his personal property be distributed as provided by statute in case of intestacy, would, of course, entitle the widow to be included in the distribution, though not specially mentioned, but where the distributees are, by the terms of the will, confined to the next of kin of the testator, effect must be given to that restriction, and the reference to the statute, or to the laws, merely affords the rule of distribution among the next of kin as if there were no widow.” Such also was the construction in the case of Platt v. Mickle, 137 N. Y. 106, of the following provision of the will of Rachel Miller: “ I give, devise and bequeath all said one-fourth part of said rest and residue of said estate * * * to such person or persons as shall then be the heirs at law and next of kin of my said grandson George Benjamin respectively, in such parts, shares and proportions as, having regard to the form in which the said estate shall then exist, such heirs and next of kin would have been then respectively entitled thereto and therein by law, if my said grandson had been seized thereof in fee simple as an inheritance of the part of his mother, or possessed of the same, and he had died intestate and they had inherited or become entitled thereto from my said grandson George Benjamin Mickle.” George Benjamin Mickle left him surviving a widow and two children, and the question was whether his widow was entitled to share under the terms of the will or whether the whole of this one-fourth part went to his two children. The ease was tried before the late Justice Abraham R. Lawrence, who decided not only that the widow was not entitled to *228 share, hut that the two children were entitled to the whole of this one-fourth interest, notwithstanding the provisions of the will that they should take only such parts, shares and proportions as they would have been respectively entitled to had their father, George Benjamin Mickle, died intestate possessed of the same. This judgment was affirmed by the Court of Appeals; and, although the question is not discussed in the opinion of Judge Gray as to whether the share which the widow would have taken in case of intestacy should be treated as undisposed of, still the question was involved and necessarily determined.
It will be seen that the language of the will in that case was even more definite and specific than in our will, fixing the exact share or interest to be distributed to the next of kin.
These cases, I think, must be deemed to have overruled the decision of this court in Knickerbocker v. Seymour, 46 Barb. 198, where it was held that a trust instrument, which provided that on the death of the life tenant the trustee should “ account for what remains to his heirs at law and next of kin * * * in the manner and proportions prescribed by the statutes of descent and distribution of this State in cases of persons who die intestate,” should be construed as intending to exclude the widow as one of the next of kin, as, otherwise, the share which -the widow would thus take would be undisposed of.
That the phrase “ next of kin ” used in the will should not be construed to include the widow, except where the instrument clearly indicates such an intent, is firmly settled in this State, as will be seen by reference to the cases of Murdock v. Ward, 67 N. Y. 387; Keteltas v. Keteltas, 72 id. 312; Tillman v. Davis, 95 id. 17; Matter of Devoe, 171 id. 281.
I find nothing in this will which indicates such an intent. On the contrary, the fact that the testator provided for continuing the annuity of $3,000 per year to his wife after the termination of the general trust and the division of his residuary estate suggests the inference that he did not expect his widow to receive the large 'sum which would be the widow’s distributive share. At the date the will was made, *229 his wife (now his widow) was thirty-six years of age, while he was twenty years older. He contemplated the possibility of her remarriage, as appears from the provision naming her as executrix so long only as she remained unmarried, but he did not deprive her of her right of dower in his real estate, which was considerable.
Plaintiffs request a finding that testator intended the decision of a majority of his executors to be controlling in case differences arose in respect to the matters resting in their discretion as to the administration and management of the estate, while defendants contend that the fixing of salaries for the two executors David S. Hester and Montgomery S. S'anford, while the other executors are required to serve without commissions or compensation, shows an intention on the part of the testator that these two executors should have the principal charge and control of the management of the estate, and that their decision in cases where differences arise between them and their associates should be controlling.
The circumstance that these two executors are given salaries for their services was due, no doubt, to the fact that they received nothing under the will and had no interest to lead them to serve without compensation, while the other executors share in the estate and, hence, have such an interest in its administration that they may well be willing to serve without compensation.
I find nothing in these circumstances, or in any other provision of the will, indicating that the powers and duties of these executors, when acting as such or as testamentary trustees, were intended by the testator to be other or different than in the case of executors and testamentary trustees in general, as to which it does not seem proper or necessary to attempt to make here a definition or formulate a rule.
Counsel for plaintiffs, including the widow, request a finding that the provisions of the will for the benefit of the widow were intended by the testator to be in lieu of dower. Ho reasons are suggested for this interpretation or authorities cited to support it. The will makes no reference to the subject of dower; and, apparently, it was overlooked. There is certainly no provision of the will which contemplates or *230 requires that the widow should be put to her election as between benefits which she receives under the will, which are not large in proportion to the size of the estate, and her dower; and I find no reason for giving the will such a construction.
Counsel upon both sides request a finding that the remainder of the testator’s residuary estate vested upon his death in the individuals who were then his next of kin. This question was not much considered at the trial, nor have I since been favored with the views of counsel upon it. I have examined this question with some care and have concluded to adopt this construction of the will as probably conforming most nearly to the testator’s intention, although there is plainly room for the construction that, there being no words of gift, except in the direction to distribute, the gift is future and the vesting postponed.