dorsements upon these original notes, and the action is brought upon those original notes.. Plaintiff rests largely upon the case of Rothschild v. Title Guarantee & Trust Co., 204 N. Y. 458, 97 N. E. 879, 41 L. R. A. (N. S.) 740. I am unable to find, however, in this transaction any elements of an equitable estoppel. There was no representation that these indorsements were originally genuine, and, if there were, there was no reliance upon any such representation by Coffin, who knew the fact that they were not genuine. The plaintiff has been in no way misled to its prejudice, and failure to prosecute and demand payment is based solely on its reliance upon this new guaranty contract, which is invalid because tainted with crime. In the case cited, upon which reliance is placed, the plaintiff, who sought to have canceled a mortgage, made payments upon a mortgage upon which her signature had been forged, but of which fact the defendants had no knowledge, so that the defendants took no steps for the collection of said mortgage, relying upon the validity of the instrument, which was thus asserted by the plaintiff in making payment thereupon. In that case the defendant was misled, and it was held so far to his prejudice as to create an equitable estoppel as against the plaintiff. As stated before, however, this element is wholly lacking in the case at bar.

The judgment should therefore be affirmed, and this court should find as a fact that the memorandum of guaranty, which is the only evidence of defendants' liability, was made in consideration of the implied promise by Mr. Coffin, acting for the bank, not to prosecute W. Platt Fisher for the crime of forgery. All concur, except KELLOGG, J., who dissents.

---

In re NESTER et al. (No. 335–46.)

(Supreme Court, Appellate Division, Third Department. January 6, 1915.)

1. EXECUTORS AND ADMINISTRATORS (§ 490*)—COMPENSATION—RENUNCIATION
OF COMPENSATION FIXED IN WILL—DELAY—EFFECT.

A delay of about 2 years 4 months by executors before exercising the right, conferred by Code Civ. Proc. § 2753, of renouncing the compensation given them by the will and electing to take in lieu thereof the commissions given by law, is not unreasonable, provided the interest of no one is jeopardized by the delay.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2078–2081, 2088; Dec. Dig. § 490.*]

2. EXECUTORS AND ADMINISTRATORS (§ 490*)—COMPENSATION—WAIVER OF
COMMISSION ALLOWED BY LAW.

Where executors, appointed by a will which fixed their annual salary in full for all commissions, drew for over two years the monthly salary fixed, with knowledge that the widow had surrenderd her annuity and had thereby shortened their terms of office, if the surrender was valid, and the court at the end of that time adjudged the surrender valid, the executors waived commissions and elected to accept the compensation fixed in the will.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2078–2081, 2088; Dec. Dig. § 490.*]

3. EXECUTORS AND ADMINISTRATORS (§ 490*)—COMPENSATION—WAIVER OF COM-
MISSION ALLOWED BY LAW.

Where executors, appointed by a will fixing their annual salary in full for all commissions, drew for over two years the monthly salary fixed,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and then filed an instrument renouncing the specific compensation, without notifying their coexecutors, and continuing to receive the specific compensation, the renunciation of the specific compensation was ineffectual.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. §§ 2078–2081, 2088; Dec. Dig. § 490.*]

Smith, P. J., and Woodward, J., dissenting.

Appeal from Surrogate's Court, Ontario County.

In the matter of the first judicial accounting of Minnie J. Nester and others, executors and trustees under the will of Samuel K. Nester, deceased, wherein Montgomery S. Sanford and another, executors and trustees, demanded commissions in lieu of specific compensation provided in the will. From a decree of the Surrogate's Court, denying to the two executors commissions and awarding to them only the specific compensation, they appealed to the Appellate Division, Fourth Department, and it (149 N. Y. Supp. 1099) transferred the appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

N. D. Lapham, of Geneva (Daniel J. Kenefick, of Buffalo, of counsel), for appellants.

Lansing G. Hoskins, of Geneva, for respondents Minnie J. Nester, Bryon M. Nester, Sylvia M. Rawleigh, and Samuel K. Nester.

W. Smith O'Brien, of Geneva, for Rose W. P. Nester.

Lewis W. Keyes, of Geneva, for respondent Harold A. Nester, an infant.

HOWARD, J. Samuel K. Nester died January 10, 1908. The appellants and several other persons were appointed executors of his will. The executors, other than the two appellants, were members of the family of the deceased; that is, they were his wife and his children. The testator directed, in a codicil to his will, that none of his executors should receive any compensation except the appellants here, and as to them the will provides:

"Except that Montgomery S. Sanford shall receive an annual salary of one thousand dollars, and that David S. Nester shall receive * * * an annual salary of fifteen hundred dollars. The above salaries to be in full for all commissions or salaries as executor or trustee."

The appellants and three others of those who were appointed executors qualified and have all acted as such continuously up to this time. A few months after the will was probated an action was brought in the Supreme Court by certain members of the family for a construction of the will. This action did not terminate until March 15, 1910, at which time a decision was rendered sustaining the will generally, but holding invalid certain provisions thereof, among which was a provision that the executors and trustees should pay to the widow the sum of $3,000 per year during her life. From the time of their appointment and up until May 10, 1910, each of these appellants drew regularly each month one-twelfth of the annual salary given to him in the will; that is, David S. Nester drew $125 each month, and Montgomery S. Sanford drew $83.33 each month.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

About two months after the decision of the Supreme Court holding invalid the annuity to the widow, the appellants filed in the office of the surrogate a written paper purporting to be a renunciation of the specific compensation given to them by the will, and electing, in lieu thereof, to take for their services the commissions allowed by law. They did not cease, however, to receive the specific compensation, but continued as before to take out of the funds of the estate their salary each month. The appellants were the two executors having the active management of the estate, and the checks for these salaries were made out by the appellant Nester. They were signed by Nester and by the appellant Sanford. A few of them were signed by one of the other executors. At the time the appellants filed their written renunciation, they did not inform their coexecutors, either in consultation or otherwise, of their purpose to renounce the specific compensation and demand the commissions allowed by law. In fact, they concealed, and intended to conceal, and they admit that they intended to conceal, from their coexecutors and the other persons interested in the estate their purpose to renounce. Previous to the alleged renunciation there appeared on each check these words:

"This check is accepted in full settlement of the following account: Executor's salary."

After the attempted renunciation, Nester, who prepared these checks, substituted in place of the words "Executor's salary" the words "Ac. Executor's Coms."; and in the books of the company kept by Nester he substituted the abbreviation "Coms." for the word "salary." At the judicial accounting in September, 1913, the appellants first made known their purpose to demand commissions as executors and as trustees. The amount in dispute is very large and substantial; the total amount of commissions demanded by the two appellants being $69,-102.48. The salary which has been paid to them up to the time of the accounting, covering the same period, is $13,899.83.

[1] An executor has a right within a reasonable time to renounce the specific compensation given to him by the will and elect to take the allowance given to him by law. Code, § 2730 (amended section 2753). These appellants attempted to renounce about 2 years 4 months after the probate of the will. This was not an unreasonable time to wait before announcing their determination, providing that nobody's interests were jeopardized by their failure to reach a conclusion sooner. Matter of Arkenburgh, 38 App. Div. 473, 56 N. Y. Supp. 523.

[2] But it is contended that, in the meantime, the appellants had waived the commissions allowed by law and had elected to accept the specific compensation provided in the will. Many decisions have been called to our attention holding that the intention of an executor to waive a statutory right need not necessarily be proved by express declarations, but may be shown by the acts and conduct of the parties. It is unnecessary for us to note such cases here, or quote from those opinions, for the soundness of the proposition is too apparent to need either precedent or argument to establish it. We are fully of the opinion from the facts presented in this case that these two executors did elect to accept the specific compensation provided in the will, instead

of the allowance made by law. This election we believe was made at the time the appellants qualified and assumed the duties of their offices, and that they continued of this mind for a considerable period thereafter is perfectly apparent. Just at what juncture they changed their minds is not so certain; but that is not of much importance.

But it is contended by the appellants that there was no election here, for the reason that an election cannot be made until the person electing has full knowledge of the facts necessary to enable him to make an election; and in this case they say that they did not have full knowledge of the facts until the decision of March 15, 1910, which cut off the annuity to the widow, thereby abbreviating their terms of office. But this assertion seems to have little force, for very soon after these appellants assumed their offices, and more than two years before the decision was rendered, the widow had by written instrument surrendered her annuity. The appellants were fully aware of this. They recognized the validity of this surrender and acted upon it. The circumstances of the Supreme Court decision cannot, therefore, be held to relieve the appellants from the election which they had previously made.

[3] The appellants elected; there can be no doubt about that. Afterwards they attempted, or at least indicated a wish, to renounce their election; but in this they seem utterly to have failed. In writing, they pretended to renounce the specific compensation; in fact, they did not renounce it at all, but continued to accept it. Had they come out boldly after the Supreme Court decision, and after filing their written renouncement, and taken the position that they had previously been deceived, thinking that their terms of offices were to be continued much longer, previous to the decision, than they were to be under the decision, and that they had acted, therefore, in ignorance of all the facts, their position here would be much improved. But they took no such frank and open position, but clung to their monthly salary with the same tenacity that they had clung to it before. They did not renounce; they only said that they had renounced. What they did amounted neither to a renunciation of their previous election nor the specific compensation.

Their whole attitude in this matter does not commend itself to the court. If they had concluded to renounce their specific compensation upon the rendition of the Supreme Court decision, assuming that they had a right to do so then, it was their duty to make their intention known. Their dealing in this particular with their coexecutors and with the persons interested in the estate was not open and fair and aboveboard, as the law requires executors to act, and as it is assumed that honorable men will act. They were resorting to stealth and cunning to carry their point. They concealed their purpose to attempt to get a large amount of money from the estate in excess of what the testator had willed them to have for their services; and while harboring such a purpose, one of the appellants bargained with his coexecutors for extra pay for his services as bookkeeper. Had his associates known of his purpose to attempt to get this large sum of money in commissions, they would not, it may be assumed, have agreed to the

$15 per week extra compensation which they voted him. In order to get this extra pay, this executor stated that his salary under the will was too small; but even at that time his purpose to demand commissions, instead of the salary, had been fully matured in his mind. Such maneuvers, if resorted to in the business world, would breed distrust and drive away that "confidence" on which business men so much rely, and on which Mr. Sanford as a banker relies.

It is our conclusion, first, that these appellants, with full knowledge of the facts, elected to accept the specific compensation given to them by the will of the testator; second, that they attempted to renounce this election, but failed; third, that they are not entitled to the commissions allowed to executors by law, and that the only reward for their services which they are entitled to is the specific compensation provided in the will.

The decree should be affirmed, with costs. All concur, except SMITH, P. J., who dissents, in opinion in which WOODWARD, J., concurs, except as to the views expressed in reference to the case of Matter of Arkenburgh, 38 App. Div. 473, 56 N. Y. Supp. 523.

SMITH, P. J. (dissenting). An irrevocable election, as I read the authorities, implies a deliberate selection between two known alternatives. After an election has been made, if the apparent situation is materially changed, that election may be revoked, if such revocation works no harm to other parties. In 15 Cyc. 262, in speaking of this rule, the editor says:

"Knowledge is not to be imputed as a matter of legal obligation, as the doctrine of election is not properly a rule of positive law, but a law of practice in equity. 'In order that a person who is put to his election should be concluded by it, two things are necessary: First, a full knowledge of the nature of the inconsistent rights, and of the necessity of electing between them; second, an intention to elect, manifested, either expressly, or by acts which imply choice and acquiescence.' Spread v. Morgan, 11 H. L. Cas. 588, 615, 11 Eng. Reprint, 1461, per Lord Chelmsford."

In 2 Story's Equity Jurisprudence, § 1097, the author says:

"Before any presumption of an election can arise, it is necessary to show that the party acting or acquiescing was cognizant of his rights. When this is ascertained affirmatively, it may be further necessary to consider whether the party intended an election; * * * whether he can restore the other persons affected by his claim to the same situation, as if the acts had not been performed, or the acquiescence had not existed; and whether there has been such a lapse of time as ought to preclude the court from entering upon such inquiries, upon the doctrine of not entertaining suits upon stale demands, or after long delays."

In section 1098 the author further says:

"Questions have also arisen in courts of equity as to the time when and the circumstances under which an election may be required to be made. The general rule is that the party is not bound to make any election until all the circumstances are known, and the state and condition and value of the funds are clearly ascertained; for, until so known and ascertained, it is impossible for the party to make a discriminating and deliberate choice, such as ought to bind him to reason and justice. If, therefore, he should make a choice in ignorance of the real state of the funds, or under a misconception of the extent of the claims on the fund elected by him, it will not be conclusive on him."

Under the rule of law as thus stated, the decision of Justice Foote, declaring certain of the trusts in the will void, presented to the executors a new state of facts, which gave to them the right to revoke their election theretofore made, and this they promptly did. Since such revocation they have done nothing inconsistent with their expressed intention to claim the commissions due under the law. Their taking of their salary prior thereto has in no way affected the interests of any other party to the contest. No action has been taken by any other person connected with the estate upon the faith of their having elected to take the salary due under the will. It is contended that under the will the executors have the power to remove one of their number for any misconduct in the execution of the duties of such executor, and that this power might have been exercised, had the other executors known of the election to take the commissions provided by law. But such conduct is clearly not within the purview of the will as authorizing their removal as executors. It is further claimed that one of the executors was given a salary for keeping the accounts, which would not have been given to him had it been known that he had elected to take the commissions provided by law. But the duties thus performed were not executorial duties. They had the clear right to hire such services, and the money paid to this executor therefor was the exact sum which had been paid to the party who had theretofore kept the accounts.

These executors have apparently been denied the right of election for two reasons: First, because from the beginning they have drawn from the estate monthly the amounts named as their salaries under the will; and, secondly, because they have concealed from others interested in the estate the fact that they had elected to take the commissions allowed by law. The receipt of the salary allowed by the will was consistent with the fact of their election to take such salary prior to the decision of Judge Foote, which changed the situation and rights of the trustees materially. Thereafter the monthly allowance was taken, not as salary, but on account of commissions, and there can be no claim that they ever intended by such acts to waive their right to legal commissions. As far as the trust funds were concerned, they were required to take out their commissions before handing over the trust income to the beneficiaries. Otherwise they would have been deemed to have waived the rights to such commissions. Olcott v. Baldwin, 190 N. Y. 99, 82 N. E. 748. The fact that, instead of reckoning each month upon just what commissions were payable upon the payments made to the beneficiaries, they took from the funds the amount provided by the will, prejudiced no one, and may be fully compensated, if need be, by charging interest upon the amounts improperly taken at that time. Confessedly, the moneys that have been drawn from the estate are very much less than the commissions allowed by law. The fact that these trustees concealed from others interested in the estate that they had made their election to take the commissions allowed by law is in no sense a legal fraud, nor, in my judgment, are these executors subject to the criticism in the prevailing opinion for having committed any ethical wrong. They were working harmoniously in connection with the other executors in caring for the estate which had been

intrusted to them. They well knew, if others interested in the estate became aware that they intended to claim their legal rights, that there would be hard feeling and friction in all their subsequent business relations. There was no legal requirement that they should give personal notice to the other beneficiaries of their election. Their concealment of this fact could work no harm to the other beneficiaries, and at most it was a question of ethics, rather than of law, whether they should at once openly have proclaimed their intention, or remained silent for the sake of harmony. I can find no legal reason, therefore, for denying to these executors and trustees the right to revoke the election they first made to take the salary after the radical change in the situation made by the decision of Judge Foote; and I can find no act since such revocation which would forfeit to them the right to their full legal commissions.

Were this question res nova, I should concur in the result reached in the prevailing opinion, on the ground that under the will of the testator these trustees were entitled to no greater compensation than that allowed thereunder. The decision of the Second Department in the Matter of Arkenburgh, reported in 38 App. Div. 473, 56 N. Y. Supp. 523, though made by an able court, is not convincing. Under that decision a testator may deny to his executors any compensation, and if they act they can receive no compensation, because they have been denied the same in the will. If, however, a testator provides in his will that an executor may have $100 for his services *and no more,* the executor may elect to take the full commissions allowed by law, notwithstanding the prohibition in the will. This, to my mind, presents a legal paradox so absurd that such construction should not be permitted. If, under section 2753 of the Code of Civil Procedure, the right to the election is given to the executor, where there be no words of limitation in the will, the section as thus construed is logical and perhaps reasonable. Where, however, the will prescribes a definite limit to the compensation which they shall receive, that limit should, in my judgment, govern with like force as if the testator had required the executors to act without compensation. Notwithstanding these views, it is perhaps more seemly to follow the decision of the Second Department, until the law shall be otherwise declared by the court of last resort.

I therefore vote for a reversal of the decree in the matter complained of by the appellants.

WOODWARD, J., concurs, except as to the views expressed in reference to the case of Matter of Arkenburgh, 38 App. Div. 473, 56 N. Y. Supp. 523.