In the Matter of the Estate of ELIZABETH WALKER, Deceased.

Surrogate's Court, New York County, December 10, 1941.

*Joseph A. Cox*, for the Public Administrator, petitioner.

*Strauss & Abrahams* [*Jerome A. Strauss* of counsel], for the respondents.

*Russell, Shevlin & Russell* [*Matthew J. Shevlin* of counsel], for the intervenor.

DELEHANTY, S. The exclusion of certain evidence tendered by one of the respondents as a witness presents an issue of law which requires comment. Proof was elicited by the petitioner and the intervenor that certain checks and withdrawal slips signed by deceased were as to all other text in the handwriting of this respondent. In most instances these checks represented transactions benefiting respondents either directly or indirectly. Respondents' counsel urged that the eliciting of proof of handwriting from the respondent witness opened the door to testimony by the witness as to the circumstances under which he procured the withdrawal slips and the checks in question. His evidence in this respect was excluded. The case of *Nay* v. *Curley* (113 N. Y. 575) is cited in support of the admissibility of the testimony. That case holds that when a part of a transaction with a deceased person has been elicited the remainder of it can be shown despite section 347 of the Civil Practice Act. The Court of Appeals in its opinion (p. 580) makes it clear that the ruling in the *Nay* v. *Curley* case was based upon the determination of the court that the questions put to the survivor in that case had in fact elicited part of a personal transaction with the deceased concerning a check and so permitted the whole of it to be developed. The case does not support the receipt of the tendered proof.

In *Matter of Gabriel* (44 App. Div. 623; affd., 161 N. Y. 644) the record on appeal shows that the executrix was asked: " Q. Did you on the 2nd day of January, 1891, draw from the Bushwick Savings Bank $2,977.48?  A. I did.  Q. And did you open an account in the Williamsburgh Savings Bank in your own name on that date with this $2,977.48?  A. Not all of it.  [I done as mother requested me to.] "  The part of the answer in brackets was stricken out on motion and an exception thereto taken.  The same witness was asked what she did with the money which she withdrew from the first savings bank.  She answered that she took it home and her mother kept $1,000 of it.  This answer was stricken out and exception taken.  *Nay* v. *Curley* was cited to support the propriety of the testimony stricken.  The exclusion of the evidence was affirmed in both appellate courts.  In *Matter of Arkenburgh* (38 App. Div. 473; 58 id. 583; 69 id. 618; affd., 171 N. Y. 688) the case of *Nay* v. *Curley* was urged as basis for admitting the receipt of testimony of a respondent who had been called to identify his own entries in the deceased's books of account.  He attempted to say in his own behalf that the entries represented payments for services rendered.  The exclusion of this tendered proof was sustained throughout.  To the same effect is *Matter of West* (252 App. Div. 919).

It is apparent of course that the preparation of the face of a check need not and frequently does not involve any contact whatever with the signer of it.  It is apparent, too, that the fact that the writing on a check or withdrawal slip is the writing of A or B or C is an *independent* fact.  *This* fact exists and is provable whether the maker is living or dead.  When the fact of the handwriting is shown certain other consequences may flow from the establishment of the writer's connection with the check or the withdrawal slip but the establishment of the *fact of handwriting* does not involve a personal transaction with the deceased and the eliciting of the identity of the writer from the writer himself does not open the door to him to testify to any transaction with the maker if the witness is otherwise incompetent under the statute.

A motion to dismiss the proceeding requires brief comment. The theory of the petitioner and intervenor is that the respondent, J. Z. Railey, abused his confidential relationship to deceased to obtain from her during her lifetime substantially two-thirds of deceased's entire fortune; and that respondent Poppy Railey connived with her husband.  It is obvious that in a situation where such abuse in fact exists and there is obtained by the dominant party a gratuitous benefit the transaction is void and title to the property so obtained remains in the subservient party.  (*Allen* v.

*La Vaud*, 213 N. Y. 322.) Such title in the case of a deceased person passes to his administrator and consequently the proceeding is maintainable to recover the property (here it is money) so procured by the dominant party. The court holds that the proceeding is maintainable and that funds so misappropriated by the dominant party may be recovered in a discovery proceeding. (*Matter of Akin*, 248 N. Y. 202.) The fact that the money has been used by the dominant party and is no longer in his possession is not a bar to the proceeding. (*Matter of Wilson*, 252 N. Y. 155.)

Turning to the merits, the court finds as fact that antecedent the year 1938 deceased had become senile and was wholly incapable of protecting herself or her property against the aggression of any one in whom she had confidence. In addition the court finds that by gross flattery of deceased, by gross abuse of his position as physician to deceased, by playing upon the fears of deceased for the safety of her money while she left it in bank and by gross misrepresentations to deceased respecting his ability to cure her ills, respondent J. Z. Railey obtained complete physical control over deceased, controlled her patterns of thought as to her former friends, her relatives and her moneys and obtained for himself and his wife the greater part of deceased's property without the rendition by either to deceased of any substantial service or benefit. Deceased was at a stage in life in which her infirmities disabled her from any substantial activity. She was in need of respectable housing and sufficient care to assure that she had adequate food and was kept decently clothed and personally clean. Her manner of life chosen while competent establishes that her requirements in these respects were modest. The record shows that respondents formed the settled design to appropriate all of deceased's money to themselves while she lived so far as they could and conceived the further design to appropriate all the rest of deceased's property when she died. This latter branch of the scheme was defeated by the jury verdict which found that the purported will of deceased drawn for her by the attorney theretofore representing respondent J. Z. Railey, was executed by deceased while she lacked testamentary capacity and was produced by the undue influence upon her of that respondent. It is not necessary to hold as possibly would be justified that the adjudication in the probate contest (to which both respondents were parties) establishes as against respondents that as early as the date of the purported will deceased lacked testamentary capacity — a capacity less in extent than the capacity required to carry on normal *inter vivos* transactions. The testimony presented by the witnesses and the exhibits in this proceeding leave no room for doubt of deceased's lack of capacity and of the respondents' sinister designs upon her and her property.

The burden of establishing the *extent* to which respondents have appropriated the property of deceased rested upon the petitioner. The showing made that some $18,000 of deceased's total resources of about $27,000 passed out of her hands or at least out of her banks does not in itself establish that respondents appropriated it to themselves or to their own benefit. Petitioner and the intervenor argue earnestly that the showing made of actual transfers to the benefit of the respondents plus the proof of the scheme of the respondents to appropriate deceased's property for their benefit plus the complete lack of showing that deceased disposed of the untraced funds elsewhere requires the court or at least authorizes the court to find as fact that the missing thousands are in the possession of the respondents. The court recognizes the great probability that what is thus argued for is the fact but it may not adjudge respondents liable merely on probabilities. The funds not traced directly to respondents or to a use for their benefit cannot be said by the court to be accountable for by the respondents. But the possession by deceased of large sums of cash otherwise unaccounted for, when added to the established fact that deceased made a practice to pay her obligations as they arose, suffices to warrant a finding by the court that any current obligation of deceased whether to the respondents or otherwise was discharged by her. The court determines that transfers out of deceased's banks directly to the respondents or either of them or effected by them to others for their benefit are recoverable in this proceeding and that the responsibility of both respondents exists in respect of funds so traced. The court finds as fact that both respondents were active participants from and after July 7, 1938, in the fraud upon deceased, that the frauds operated to the benefit of both of them and that they are equally chargeable with the responsibility to refund to deceased's estate the property misappropriated after that date.

Beginning with July 7, 1938, deceased resided in the home of respondents. Prior thereto and up to mid-April, 1938, she was living with a Mrs. Dunn. Thereafter and until she moved into the home of respondents she was living either at a hotel or in a boarding house which the respondents selected for her. The medical services to deceased in the period between January 1, 1938, and July 7, 1938, were of little importance. Those rendered after July 7, 1938, were integral with the fraudulent scheme of respondents. The court finds as a fact that all medical service rendered to deceased by respondent J. Z. Railey was paid for by deceased in cash; and further finds that the withdrawals from deceased's funds which reached this respondent up to and through April 8, 1938,

were all appropriations by this respondent of deceased's funds for which no medical or other service had been rendered nor other consideration given. Accordingly he is chargeable with $200 withdrawn from Seamen's Savings Bank on March 5, 1938, with $200 drawn from the same bank on March 25, 1938, with $200 drawn from Empire City Savings Bank on April 8, 1938, and with $200 drawn from American Savings Bank on May 9, 1938. In each instance legal interest is charged to respondent as well. Since both respondents were the beneficiaries of a deposit account with R. H. Macy & Co. into which certain of deceased's moneys were diverted they are both held accountable for the deposits therein of deceased's funds as follows: May 19, 1938, $20; May 20, 1938, $75; June 14, 1938, $195.75; June 23, 1938, $40; June 25, 1938, $250. In each instance legal interest is also charged to both respondents.

From and after July 7, 1938, all withdrawals are chargeable to both respondents since they were equally involved in the common plan to procure these moneys from deceased. The following sums with legal interest thereon respectively from the listed dates must be refunded to the estate: July 13, 1938, $385.50; August 1, 1938, $1,412.50; August 16, 1938, $115.23; August 20, 1938, $152; September 1, 1938, $19.50; September 8, 1938, $109.26; September 22, 1938, $150; October 1, 1938, $200; October 5, 1938, $32.54; October 5, 1938, $90; October 11, 1938, $5,050.12; November 1, 1938, $400; November 7, 1938, $500; November 15, 1938, $60; December 15, 1938, $28.47; December 15, 1938, $500; December 16, 1938, $603.01.

Comment is required respecting the separate defenses set up in the answer to the amended petition. The first challenges the jurisdiction of the court and has been treated already. The second separate defense alleges a contract by deceased to leave to respondents all of her property in compensation for services to be rendered by them. No proof in support of such contract was offered by respondents. On the record the court finds that no such contract was made. The third separate defense pleads a setoff or counterclaim based upon the alleged furnishing of medical, surgical and nursing care and board and lodging to deceased of the stated value of $20,346. The court has already stated that it finds as a fact that deceased discharged with cash all obligations to respondents arising in any form whatever. In addition, the court holds that the taking of deceased by respondents into their household and the furnishing to her there of lodging, nursing care, food, clothing and medical attention was a part of a scheme and conspiracy of the respondents to secure for themselves the property of deceased. It holds that the respondents can recover for none

of the services rendered or the expenses incurred by them in that fraudulent scheme. For both reasons stated, the court dismisses the counterclaim.

Submit, on notice, decree directing repayment to the estate of the sums herein charged to respondents respectively.