Roy M. Page, S.
The above-named decedent, while a patient at Broome County Hospital, died intestate on October 31, 1956. On December 18, 1956 his Avidow, Donna Mae Gray, Avas appointed administratrix of his estate. The only distributees of his estate are his said Avidow and a daughter, Thelma Gray.
During his lifetime, the deceased and his second wife, after their marriage in 1952, had cohabited only about three months Avhen she, either for good cause or otherwise, had discontinued her cohabitation Avith him.
Shortly after this, the deceased sold his home, Avhich was a house and lot known and designated as No. 15 Amsbry Street, Binghamton, Noav York, and took up his residence as a boarder and roomer Avith the respondent herein at her house in the toAvn of Conklin, Broome County, New York, where she conducted a boarding and rooming home for elderly persons.
In the latter portion of deceased’s residence with respondent, during the year 1956, he received payment of the balance of the purchase price for his Amsbry Street property in the sum of $5,440.83 in the form of a check from the attorneys in charge of the transfer and, also, had his furniture and furnishings, Avhich had been in storage, moved up to the boarding home of the respondent. There was also a 1947 Oldsmobile of small value, Avhich is in the same category as the furniture and furnishings.
The said check Avas indorsed by Mr. Gray and deposited by the respondent in a savings account at Binghamton Savings Bank, first in the name of herself alone and, later, in a joint account between herself and her daughter. The furniture and furnishings have, since the death of the deceased, remained in the possession of the respondent. She claims both the proceeds of the check and said furniture and furnishings, as well as the automobile, were given to her by the deceased.
The objective of the present proceeding is to determine whether or not the proceeds of this check and the other personal property here in question Avere gifts, so that the respondent would be permitted to retain them as her own or if they should be recovered by the petitioner-administratrix as assets of the estate of the deceased.
The burden of proof to establish any gift is upon him who asserts it. To support this burden of proof, all the legal elements of a gift must have been substantiated. Most prominent *114 among the requirements of a gift are intention on the part of the donor to make a gift and the requirement of delivery, which always comprehends the surrender of all dominion over the subject matter of an alleged gift.
The most seriously questionable element involved in the present case is as to Mr. Gray’s having had the necessary intent to make a gift either of the check or the other personal property. In the present case, this issue is complicated by the question as to whether or not he possessed the necessary degree of mental capacity. The preponderance of evidence is to the effect that, during all the portion of 1956 that he lived, he was badly afflicted with arteriosclerosis and a cardiac condition which tended greatly to accentuate the form of mental disability which is generally characterized as “senility”. At any rate, being in a debilitated physical condition, he was very much dependent upon the respondent, so that, if any undue influence had been exercised by her upon him, he was not in a very good position to resist it.
The only witnesses whose testimony can be regarded as having any important bearing on the above-stated issues are the respondent herself, together with testimony provided by a woman named Mrs. Emma Hathaway, who was, during the last few months that the deceased had resided with the respondent, also one of her boarders and roomers, and Dr. Edward Blumenkranz, a psychiatrist, and, also, a general practitioner, who attended the deceased during the last few months of his life.
Support for the theory of a gift as to any of the property in question, particularly in relation to the alleged donor’s unconstrained intention to make a gift of any thereof, is practically all confined to the testimony of the respondent herself. Preliminary to the hearing of this proceeding upon the merits, counsel for the petitioner had conducted a rather extensive inquisitorial examination of the respondent. In the course of this examination, the respondent had asserted her claim that the personal property here in question was all hers by reason of gifts to herself which had been made to her by Mr. Gray. Thereafter, in the hearing upon the merits herein, counsel for the respondent strenuously insisted that, consistently with the provision'of section 347 of the Civil Practice Act to the effect that this provision limits the application of this section to the trial of an action or the hearing upon the merits of a special proceeding, because the respondent had testified in the pretrial examination as to alleged gifts, thus having “ opened the door ”, he had a right to fully adduce testimony of his client as to her personal transactions with the deceased in relation to his having made the alleged gifts to her. Counsel’s statement of Ms contention *115 in this connection, as stated in his brief, is: “ Respondent's assertion of title by gift at the very outset of the examination by petitioner raised and joined the issue of title at that point and terminated the inquisitorial stage of the discovery proceeding and petitioner’s continued examination of the respondent thereafter constituted a waiver of Section 347 of the Civil Practice Act and opened the door to testimony by the respondent.”
In support of this contention, he cited authorities as follows: Matter of Schulman (189 Misc. 672); Matter of Garland (97 N. Y. S. 2d 442); Matter of Berardini (238 App. Div. 433, affd. 263 N. Y. 627); Matter of Comfort (234 App. Div. 19); Matter of Rosen (173 Misc. 433), and Matter of Benioff (73 Misc. 493).
Counsel for the administratrix-petitioner, under section 347 of the Civil Practice Act objected to the competency of the witness on the ground that the inquisitorial phase of this proceeding was not a hearing upon the merits, and, therefore, section 347 permitted him, preliminarily, to examine the respondent as to her personal transactions with the deceased. However, a considerable amount of her testimony was taken, but subject to a motion to strike it out. In support of his motion, counsel for the administratrix-petitioner also cited a group of authorities as follows: Matter of Schulman (189 Misc. 672, supra); Matter of Erickson (135 N. Y. S. 2d 56); Matter of Walker (177 Misc. 991), and Matter of Cohen (177 Misc. 304, affd. 263 App. Div. 938).
The granting or denial of the motion to strike out the respondent’s testimony brings squarely into focus herein the validity and present applicability of the above-quoted contention as stated by counsel for the respondent.
No case in either one of the last-above-cited groups of cases appears to be squarely in point on the resolution of the precise question which has been raised herein by counsel for the respondent. This question is, does the mere making of the claim of a gift voiced by a respondent in what was designed to be the inquisitorial phase of a discovery proceeding and in advance of the respondent’s having filed any answer, ipso facto, terminate the inquisitorial phase upon the theory that the respondent’s having mentioned her claim of a gift immediately joined an issue so that, from that point on, the inquisitorial phase of the proceeding was terminated and the inception of the hearing upon the merits immediately transpired?
Of the above-cited cases, Matter of Schulman, decided by the very able Surrogate McGarey, of Kings County in 1947 comes the nearest to lending some aid and comfort to the respondent. The reason this is so is because of, in its decision of this *116 case, the court stated (189 Misc. 674): “Its (Surrogate’s Ct. Act, § 206) language, however, seems to indicate that an issue which requires a determination on the merits has not been joined unless the respondent has interposed an answer, or on the examination has asserted a claim of title or right to possession of the property inv dived in the inquiry.” (Emphasis supplied.) However, this statement of the court was dicta in that case. In this same case, the court (p. 674) further stated: “ The protection afforded by section 347 of the Civil Practice Act is not waived until the testimony so taken under the inquisitorial phase of the proceeding is offered in evidence on the trial of the issue of title, or is used as a basis for the determination of title.” In this connection, Judge McGarey cited Matter of Van Volkenburgh (254 N. Y. 139); Bambauer v. Schleider (176 App. Div. 562), and Farmers’ Loan & Trust Co. v. Wagstaff (194 App. Div. 757).
It is true, in the present case, that the respondent, in the early part of her preliminary examination, claimed the property in question as having, in his lifetime, been given to her by the decedent. But it seems to me highly questionable that, in advance of her having set up any affirmative defense by way of an answer, the occurrence of the incident that, in the course of her preliminary examination, she asserted a gift, simply this and nothing more, should have the effect of forcing the petitioner in the discovery proceeding to immediately conclude her preliminary examination or else be deemed to have “ opened the door ” so that the respondent could, free of the inhibition of section 347 of the Civil Practice Act, thereafter, testify on her own behalf by way of direct examination by her own counsel as to personal transactions with the deceased. If, in this connection, the contention of the respondent is to be upheld, the useful purpose of the inquisitorial stage of any such proceeding, viz., to obtain information, would be entirely destroyed. The cause of justice and fair dealing is much better served by permitting the petitioner in such a case as this to complete his inquest which, in many instances and, depending upon the nature of the facts elicited, might save all parties concerned the necessity of going any further.
Moreover, this would seem to involve no danger of injustice to cither party. Their respective counsels could and should agree as to the termination of the inquisitorial phase of the proceeding. If not, the court could and should make them “ agree ”. In any instance of a jury trial in a discovery proceeding, the jury would know nothing of what had-been brought *117 out during the preliminary inquisitorial stage of the case and, in a nonjury case, the court, if he heard that phase at all, should be very well able to “ let it go in one car and out the other.”
Regardless of the applicability of section 347 of the Civil Practice Act, the weight of respondent’s testimony, of course, would be adversely affected because of her self-interest and, more especially because of other evidentiary factors, such as the paper writing, to which reference is hereinafter made. Petitioner’s motion to strike out respondent’s testimony in relation to personal transactions between the decedent and herself is granted, but neither the barring nor the acceptance of the respondent’s testimony alone would be determinative in the present case.
The testimony of the witness Hathaway was all slanted toward showing that the respondent had dominated the deceased and had subjected him to various forms of discipline, thereby having accentuated the dominant position she bore toward him, especially in view of his weakened physical and mental condition. This included such incidents as the respondent’s having slapped and otherwise pushed Mr. Gray around in various ways and, on one occasion, having pushed him outdoors and left him there for quite some time before readmitting him to the house. The testimony of this witness tends to show that, at the times of the alleged consummation of gifts of any or all of the personal property here in question, the deceased was pretty much under the control of the respondent. Although the testimony of this witness was to the effect that the decedent was rational at all times, yet there is considerable other evidence to the contrary.
The testimony of the .other above-mentioned witness, Dr. Blumenkranz, which was, in all respects, very credible and convincing, shows that, during the period of the alleged gifts, Mr. Gray was in a very debilitated condition and, although not insane in any usual sense of the word, yet his physical condition affected the normal functioning of his mind. The doctor’s testimony shows that the deceased needed extensive nursing care and that he received this from the respondent. . He did not testify as to any facts tending to show any abuse of the deceased by the respondent. However, his testimony did tend to sIioav that whatever, if any, undue influence upon him may have been attempted by the respondent would have been likely to have met Avith favorable results from her standpoint.
Another element in the evidence relied upon by the respondent was a paper writing which Mr. Gray wrote and signed in manner and form as follows: ‘‘ Clifford Peter Gray. I hereby assign to Eva Lott and her heirs namely all furnishings in house or else *118 where for payment of room and hoard whatever left after taxes etc. after being paid after sale of #15 Amsbry Street. Signed Clifford P. Gray February 15th, 1956.”
Obviously this writing is ambiguous and a far cry from constituting proof of an intent to make any gift. As its wording was deciphered and agreed to by both of counsel, it speaks of making an assignment in consideration of receiving “ room and board ”, thus negativing rather than supporting the theory of a gift.
It seems to me more reasonable to conclude that if, at that time, Mr. Gray was capable of having any well-defined intent, his purpose was to constitute the respondent as the “ banker ” of his money derived from the sale of No. 15 Amsbry Street and custodian of his other personal property. It is much more logical to assume that this was for the purpose of future credits against his “ room and board ” and that the proceeds of the check, as a part of them actually were, would be applied for his benefit in various ways.
The only reasonably supportable conclusion to be derived from the evidence as a whole is that it is insufficient to support the burden of proof of a gift which rested upon the respondent. Where the issue is as to a gift’s having been effectuated, in order that the gift be deemed to have been established by a fair preponderance of the evidence, courts require “ evidence of great probative force” and clarity. (Matter of O’Connell, 33 App. Div. 483.)
The respondent has made no claim to title of any of the property in question otherwise than its having been transferred to her by way of a gift. This results in the situation being such that we must hold that the assets in question and each of them is, either in specie or to the extent of their value, subject to being recovered by the administratrix-petitioner as assets of the estate of said deceased.
However, although without positive proof in the present proceeding, the intimation is present in the hearing that the respondent paid out considerable sums derived from the proceeds of the check here in question for the discharge of Mr. Gray’s hospital and other medical bills. It would be grossly unfair to her and unjust enrichment of the estate if she could not recover these expenditures. Also, it appears from the testimony that, for several months in the later portion of his life, the deceased was in such condition that he required quite extensive nursing care, care and attention much in excess of that which, ordinarily, would be given to a boarder or roomer, and that such care was provided for him by the respondent. Despite this circumstance, *119 the respondent was paid at the low rate of only $20 per week, as against a fair value of the same services which would be at least twice that amount. The right should be reserved to the respondent to file a claim against the estate and to present these considerations for determination on the judicial settlement of the account of the administratrix herein.
Settle order in accordance with this decision.